Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JENNIFER CORTÉS HERNÁNDEZ<br><br>Peticionaria<br><br>v.<br><br>LUIS R. MEDINA LEBRÓN<br><br>Recurrido | TA2026CE00444 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil núm.: CG2019RF00209 (601)<br><br>Sobre: Divorcio |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 11 de mayo de 2026.

Comparece ante este tribunal apelativo, la Sra. Jennifer Cortés Hernández (señora Cortés Hernández o peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), el 24 de febrero de 2026, notificada el mismo día. Mediante este dictamen, el foro primario resolvió que la exención de matrícula por veteranos, adjudicada a las hijas menores, constituía la cuantía de alimentos por gastos universitarios que corresponde satisfacer el padre no custodio.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la determinación recurrida.

### I.

El 2 de octubre de 2019, la señora Cortés Hernández incoó una *Demanda* sobre divorcio por ruptura irreparable contra el Sr. Luis R. Medina Lebrón (señor Medina Lebrón o el recurrido). En la misma, se detalló que el matrimonio procreó a dos (2) menores,

Inara Sofía y Naima Isabel, ambas de apellidos Medina Cortés. A su vez, se alegó que la peticionaria poseía la custodia de las menores y que, como parte de un acuerdo extrajudicial entre las partes, el señor Medina Lebrón se relacionaba con estas en fines de semana alternos. Finalmente, se solicitó la disolución del vínculo matrimonial, la custodia de las menores y la fijación de una pensión alimentaria.[1]

Luego de varios incidentes procesales, innecesarios pormenorizar, el 21 de noviembre de 2019, notificada el 17 de diciembre del mismo año, el TPI emitió la *Sentencia*. Mediante esta, declaró disuelto el matrimonio, se concedió la custodia monoparental a la madre, se estableció la patria potestad compartida y se fijó las relaciones paternofiliales con el padre no custodio.[2]

El 22 de enero de 2020, se notificó el *Informe* del Oficial Examinador de Pensión Alimentaria, en el que se recomendó una pensión mensual a favor de las menores por $1,600. A su vez, **se especificó que las partes estipularon que el padre pagará el 50% de los gastos extraordinarios.**[3]

Eventualmente, y sobre tres (3) años después, el 11 de agosto de 2023, la señora Cortés Hernández presentó una *Moción en Solicitud de Revisión de Pensión Alimentaria.*[4] El caso se refirió a la Examinadora de Pensiones Alimentarias (EPA); sin embargo, no se atendió. Por lo que, el 29 de octubre de 2024, la peticionaria presentó una *Segunda Moción Urgente Reiterando Solicitud de Revisión de Pensión Alimentaria.*[5] En esta última, reiteró su solicitud de revisión, advirtiendo que la moción anterior continuaba sin

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 1.
[2] SUMAC TPI, Entrada núm. 20.
[3] SUMAC TPI, Entrada núm. 23.
[4] SUMAC TPI, Entrada núm. 29.
[5] SUMAC TPI, Entrada núm. 36.

resolverse y, que entre las circunstancias que habían cambiado, se encontraba que una (1) de las menores comenzó estudios en la Universidad de Puerto Rico. Arguyó que, como madre custodia, se encontraba asumiendo sola todos los gastos universitarios. En consecuencia, le solicitó al TPI que ordenara a la EPA a señalar la vista de revisión o que refiriera el caso a otro Oficial Examinador.

El 17 de junio de 2025, notificada al día siguiente, el TPI emitió una *Resolución y Orden* acogiendo el informe y las recomendaciones del Examinador de Pensiones Alimentarias, Lcdo. Ángel Ojeda Espada, e impuso al padre no custodio una pensión alimentaria provisional de $1,015 bisemanales.[6] A su vez, se calendarizó la vista de revisión de la pensión para el 30 de julio de 2025.

En apretada síntesis, el 18 de septiembre de 2025, la señora Cortés Hernández presentó un escrito intitulado *Moción Informativa en Solicitud de Orden.*[7] En esta, informó al foro primario que las partes llegaron a un acuerdo transaccional en el **que establecieron que estarían asumiendo el 50% de los gastos suplementarios los cuales incluyen, gastos universitarios de matrícula, libros, cuotas y otros**. Además, expresó que en el presente caso ha estado en proceso de revisión de pensión iniciado en agosto de 2023 y, como parte del mismo, había quedado pendiente de resolución una solicitud de reembolso de gastos por concepto de matrícula de la universidad para agosto 2024, enero y agosto 2025. Como consecuencia de esto, arguyó que el señor Medina Lebrón adeudaba la suma de $2,126.19 correspondientes al 50% de los pagos de matrícula.

---

[6] SUMAC TPI, Entrada núm. 73.
[7] SUMAC TPI, Entrada núm. 78.

El 6 de octubre de 2025, el TPI emitió una *Orden*[8] estableciendo lo siguiente:

> CADA PARTE DEBERÁ PAGAR EL GASTO DE MATRÍCULA DE LAS MENORES EN LA PROPORCIÓN DISPUESTO EN LA RESOLUCIÓN DE ALIMENTOS DEL EXAMINADOR DE PENSIONES ALIMENTARIAS.

Así las cosas, surge del expediente que el 31 de octubre de 2025, el TPI emitió una *Resolución sobre Pensión Alimentaria* acogiendo un acuerdo entre la señora Cortés Hernández y el señor Medina Lebrón. Mediante dicha sentencia por acuerdo, se estableció una pensión alimentaria a beneficio de las menores procreadas por estos dos. La referida determinación estableció que el señor Medina Lebrón pagaría una pensión bisemanal de $1,015 y, **que cualquier otro gasto universitario,** gasto médico no cubierto por el plan médico o cualquier gasto extraordinario**, será cubierto en un cincuenta por ciento (50%) en el ejercicio de la patria potestad**. A su vez, se estableció un plan de pago sobre el cómputo en retroactivo que adeudaba el señor Medina Lebrón en alimentos.[9]

El 9 de febrero de 2026, la señora Cortés Hernández presentó un escrito intitulado *Moción en Solicitud de Orden ante Desacato*. En este, la peticionaria adujo que el recurrido adeudaba a las menores $4,362 en gastos universitarios, según lo establecido en la *Resolución* dictada el 31 de octubre del 2025.[10]

El 23 de febrero de 2026, el señor Medina Lebrón presentó una *Oposición a la Moción en Solicitud de Orden ante Desacato.* Arguyó que no procedía el desacato toda vez que, como veterano, este transfirió a sus hijas el beneficio de exención de matrícula conferido por la Universidad de Puerto Rico. El peticionario razonó que, en virtud de la Ley núm. 203-2007, conocida como *Carta de Derechos del Veterano Puertorriqueño del Siglo XXI,* según

---

[8] SUMAC TPI, Entrada núm. 83.
[9] SUMAC TPI, Entrada núm. 86.
[10] SUMAC TPI, Entrada núm. 87.

enmendada, dicha exención constituye un crédito a favor del veterano que debe ser atribuido a este en el pago de gastos universitarios.[11]

El 24 de febrero de 2026, el TPI emitió una *Orden*[12] mediante la que determinó lo siguiente:

> HA LUGAR A LA SOLICITUD DEL DEMANDADO, SE [DETERMINA] NO SE CONFIGURA EL DESACATO DE ALIMENTOS YA QUE LA PARTE CORRESPONDIENTE AL DEMANDADO FUE CUBIERTA POR UN BENEFICIO FEDERAL POR ESTE SER VETERANO DEL EJÉRCITO DE LOS ESTADOS UNIDOS.

Inconforme con la decisión, el 10 de marzo de 2026, la señora Cortés Hernández presentó UNA *Moción de Reconsideración de Orden*[13], la cual fue declarada *No Ha Lugar* al día siguiente, 11 de marzo.[14]

Todavía en desacuerdo con lo determinado, la peticionaria acudió ante este foro intermedio imputándole al TPI haber incurrido en los siguientes errores:

> ERRÓ EL TRIBUNAL DE INSTANCIA AL CONCLUIR QUE EL BENEFICIO EDUCATIVO O DESCUENTO AL QUE TIENE DERECHO LA MENOR, POR SER HIJA DE VETERANO, SATISFACE LA OBLIGACIÓN ALIMENTARIA DEL ALIMENTANTE.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL PERMITIR UNA REVISIÓN COLATERAL DE UNA DETERMINACIÓN FINAL Y FIRME, Y DEJAR SIN EFECTO UNA ORDEN FINAL Y FIRME, SIN CUMPLIR CON EL DEBIDO PROCESO DE LEY.
>
> ERR[Ó] EL TRIBUNAL DE INSTANCIA AL INTERPRETAR Y APLICAR EL DERECHO EN CONTRA DE LA POLÍTICA PÚBLICA DEL ESTADO DE GARANTIZAR EL DERECHO CONSTITUCIONAL DE LOS MENORES A RECIBIR ALIMENTOS.

El 14 de abril de 2026, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 20 de abril para expresarse. El 19 de abril de 2026, el recurrido presentó un escrito

---

[11] SUMAC TPI, Entrada núm. 91.
[12] SUMAC TPI, Entrada núm. 92.
[13] SUMAC TPI, Entrada núm. 93.
[14] SUMAC TPI, Entrada núm. 94.

intitulado *Memorando en Oposición a Petición de Certiorari.*[15] Así, nos damos por cumplidos y; a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró,* 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra.* Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari.* La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en

---

[15] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), Entrada núm. 3.

> estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra.

[Énfasis Nuestro]

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra.* Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, **en casos de relaciones de familia** y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si procede expedir un auto de *certiorari,* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra.* Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

**Alimentos**

La obligación de los progenitores de brindar alimentos a sus hijos e hijas menores de edad no emancipados es parte esencial del

derecho a la vida consagrado en las Secciones 1 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. *McConnell v. Palau*, 161 DPR 734, 745 (2004). Este deber está regulado estatutariamente en varios artículos del Código Civil, en la *Ley Especial para el Sustento de Menores*, Ley núm. 5 de 30 de diciembre de 1986, según enmendada (Ley núm. 5), 8 LPRA sec. 501 *et seq.*, y en las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 9535 de 15 de febrero de 2024.

En lo aquí pertinente, sabemos que mientras los hijos son menores de edad y no se han emancipado, ya sea por razón de matrimonio o por dictamen judicial, el progenitor custodio con patria potestad está capacitado para reclamar alimentos para beneficio de estos. *Toro Sotomayor v. Colón Cruz*, 176 DPR 528, 535 (2009); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 572 (2012). En esos casos, aunque es el padre o madre custodio quien presenta la acción, la misma pertenece al hijo, es decir, el padre o madre demandante que la inició solo actúa como un representante. *Toro Sotomayor v. Colón Cruz*, supra, a la pág. 536; *Santiago, Maisonet v. Maisonet Correa*, supra, a la pág. 573. Ahora bien, una vez cesa esa incapacidad por minoridad, los padres ya no pueden acudir a los tribunales a representar los intereses de sus hijos. En tal caso, el hijo ya mayor de edad se encuentra revestido de la capacidad jurídica necesaria para así hacerlo. *Santiago, Maisonet v. Maisonet Correa*, supra.

Por otro lado, el Artículo 653 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7531, establece que se entenderá por alimento "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". La educación se considera parte de los alimentos cuando el alimentista es menor de edad. *Íd.*

Todo lo que se considere alimentos incluirá tanto las necesidades físicas del alimentista, como las intelectuales. *Argüello v. Argüello*, 155 DPR 62, 71 (2001).

**Exención de Matrícula y Beneficios por Veteranos**

En Puerto Rico, nuestro ordenamiento jurídico ha estatuido varios beneficios y privilegios a favor de los hombres y mujeres que se encuentran prestado o han prestado servicios a las fuerzas armadas de los Estados Unidos de América. Véase, Ley núm. 203-2007, conocida como *Carta de Derechos del Veterano Puertorriqueño del Siglo XXI*, según enmendada, 29 LPRA sec. 735 *et seq*. Ahora bien, dicha carta no solo beneficia directamente a los veteranos y veteranas puertorriqueños, sino que extiende estos privilegios y exenciones a los familiares inmediatos, o familia nuclear de estos. Artículo 6 de la Ley núm. 203-2007, 29 LPRA sec. 739.

Precisamente, en reconocimiento de la importancia de la aportación de aquellas personas que han prestado el servicio militar, el Artículo 4 en su inciso (B), sub incisos (f) y (k), de la Ley núm. 203-2007, 29 LPRA sec. 737, establece lo siguiente:

> (f) La Universidad de Puerto Rico y todas sus unidades académicas, así como cualquier institución de educación postsecundaria pública, brindarán prioridad en la admisión de estudiantes a los veteranos, sus cónyuges, sus hijos y dependientes. **Los cónyuges e hijos, y dependientes de los veteranos tendrán derecho a un descuento de un cincuenta por ciento (50%) del costo por concepto de matrícula, cuotas, libros y otros materiales necesarios para completar su grado académico.** Este privilegio aplica tanto al nivel subgraduado universitario, al nivel postsecundario técnico-profesional, como al nivel graduado o profesional.
>
> [...]
>
> (k) **Entre las instituciones de educación postsecundaria públicas que deberán honrar los derechos que le son reconocidos en este Artículo a los(as) estudiantes veteranos(as), sus cónyuges, sus hijos(as) y a sus dependientes, así como a los(as) hijos(as), viudos(as) y dependientes de militares muertos en acción o de militares** que se encontraren en el servicio militar activo federal al momento de su fallecimiento y cuya muerte se relacione al servicio militar prestado, según apliquen, están incluidas, sin que necesariamente se entienda como una limitación,

> el Conservatorio de Música de Puerto Rico, el Instituto Tecnológico de Puerto Rico del Departamento de Educación y sus correspondientes recintos, la Escuela de Artes Plásticas y Diseño de Puerto Rico, la Escuela de Troquelería y Herramentaje de Puerto Rico (ETH), el Colegio Universitario de San Juan y el Colegio Universitario de Justicia Criminal (Gurabo). [Énfasis nuestro]

Ahora bien, dicha exención no es un crédito ni compensación o pago, más bien es un eximente que disminuye o alivia los costos de estudios del veterano, su cónyuge y sus hijos o dependientes, respectivamente. En este sentido, la exención no se transfiere del veterano a su familia nuclear, sino que se le reconoce directamente a cada uno de estos por el vínculo jurídico con aquel que se encuentra prestando o ha prestado servicios militares en Estados Unidos.

**III.**

En esencia, la peticionaria señaló que el TPI erró al concluir que la exención de matrícula concedida por la Universidad de Puerto Rico como hijas de veterano, satisface la obligación alimentaria del recurrido y, con ello, permitir la revisión colateral de una determinación final y firme dejando sin efecto la orden en la que imponía, adicional a la pensión fija, la división de los costos de estudios universitarios de sus hijas. A su vez, arguyó que con dicha decisión se violentaba la política pública del Estado en garantizar el derecho constitucional de los menores a recibir alimentos.

De entrada, advertimos que la controversia planteada, por tratarse de un caso sobre relaciones de familia, específicamente, sobre alimentos de menores, está incluida en las instancias que esta *Curia* puede atender al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. A su vez, están presentes varios de los criterios enunciados en nuestra Regla 40, antes citada, por lo que, determinamos expedir el recurso solicitado, en especial, por ser el momento más propicio para atenderlo, por ser contraria en derecho

la decisión recurrida, y así, evitar un fracaso irremediable de la justicia.

En el primer señalamiento de error, la peticionaria señala que erró el tribunal al determinar que la exención de matrícula otorgada a las menores por virtud de la Ley núm. 203-2007 satisface la obligación alimentaria que le corresponde aportar al padre no custodio por los gastos universitarios. Adelantamos que le asiste la razón.

En primer lugar, surge del tracto procesal que, en la *Resolución sobre Pensión Alimentaria*, emitida y notificada el 31 de octubre de 2025, el foro primario estableció, sobre los costos de estudios, que "cualquier otro gasto universitario" o "cualquier gasto extraordinario, será cubierto en un cincuenta por ciento (50%) en el ejercicio de la patria potestad".[16] Enfatizamos que, mediante dicha determinación, el TPI ratificó un acuerdo entre la señora Cortés Hernández y el señor Medina Lebrón.

En este sentido, no cabe duda de que las partes estipularon diáfanamente que el costo total por el gasto universitario será pagado a razón del 50% cada uno sobre la suma completa a desembolsar, sin considerar en el cómputo la exención de matrícula en virtud de la Ley núm. 203-2007. De entender lo contrario, así lo hubiesen pactado.

Ahora bien, precisa advertir que los privilegios otorgados por la Ley núm. 203-2007 pertenecen a los cónyuges, hijos o dependientes de los veteranos. Por ende, la exención en el pago de la matrícula, cuotas, libros y otros materiales corresponde a los hijos o dependientes directamente, y no surge como una transferencia monetaria que hiciera el propio veterano para que proceda su concesión. Es decir, el veterano que prestó o presta servicios en la

---

[16] SUMAC TPI, Entrada núm. 86.

armada de los Estados Unidos no tiene que realizar trámite alguno ni menos una aportación económica para ceder la exención que beneficia a los hijos y sus dependientes.

Así pues, y contrario a lo que aduce el recurrido, el referido privilegio estatutario por estudios no favorece directamente a la excónyuge como madre custodia, sino que beneficia únicamente a las hijas que ambos procrearon. Por tanto, no tiene cabida otra interpretación cuando el texto de la Ley núm. 203-2007, en el inciso (B)(f), *supra,* es explícito al disponer que "[l]os cónyuges e **hijos, y dependientes de los veteranos tendrán derecho** a un descuento de un cincuenta por ciento (50%) del costo por concepto de matrícula, cuotas, libros y otros materiales necesarios para completar su grado académico".

Apuntalamos, además, que en la Ley núm. 203-2007 la Asamblea Legislativa no tuvo la intención de aplicar la exención como un crédito a favor del veterano que tiene la obligación de pagar gastos universitarios de sus hijos o dependientes. Por el contrario, la referida Ley solamente establece que es un derecho de los hijos o dependientes de este, por razón del servicio de su padre o madre veterano. De igual forma, precisa destacar que, aunque se reconozca que este privilegio nace como consecuencia de los servicios militares prestados por el señor Medina Lebrón, ello no constituye razón suficiente para atribuirle en forma de crédito el descuento que la legislatura otorgara en el pago de los estudios universitarios. Reiteramos que, si esa era la intención de los legisladores, así lo hubieran estatuido expresamente.

De otra parte, subrayamos que aceptar la pretensión del señor Medina Lebrón implica que este no tendría que aportar económicamente para la educación, lo que como explicamos es parte de los alimentos cuando, como este caso, las alimentistas son menores de edad. En este sentido, y si aváláramos su invitación,

esto conllevaría a que la madre custodia tendría que satisfacer la totalidad de la cuantía de la matrícula y otros gastos relacionados a los estudios universitarios; una vez restada la exención del 50%. Lo que no estamos dispuestos a consentir. Por ello, **y acorde con las estipulaciones de las propias partes**, tanto la señora Cortés Hernández como el señor Medina Lebrón tienen la obligación de satisfacer cada uno el 50% del monto que resulte de la deducción de la mencionada exención a la totalidad de los gastos universitarios. Recalcamos que esta interpretación es la única que le otorga validez a lo acordado por ambos, y más aún, salvaguarda y protege el bienestar de las menores.

En fin, concluimos que el TPI incurrió en el primer error imputado por la peticionaria al incidir en la aplicación incorrecta del derecho sustantivo. Así, habiéndose cometido el mismo, consideramos que resulta innecesario discutir los errores restantes.

Por último, resulta menester resaltar que, en nuestro ordenamiento "las determinaciones de alimentos y de custodia de menores no constituyen propiamente cosa juzgada, ya que están sujetas a revisión judicial, en el tribunal de instancia, si ocurre un cambio en las circunstancias que así lo justifique, siempre, claro está, tomando en consideración los mejores intereses y el bienestar de los menores. *Santana Medrano v. Acevedo Osorio*, 116 DPR 298 (1985); *Centeno Alicea v. Ortiz*, 105 DPR 523 (1977)." *Figueroa v. Del Rosario*, 147 DPR 121, 128-129 (1998).

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y; en consecuencia, revocamos la *Resolución* recurrida.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.



LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones